TG

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN PORTFOLIO MORTGAGE ) <br> CORP., a Nevada Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DONALD BAILEY, an individual, ) <br> ) <br> Defendant. ) | No. 04 C 3428 <br><br> Wayne R. Andersen <br> District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of Plaintiff American Portfolio Mortgage Corp. ("APM") for summary judgment on Count I of the Complaint pursuant to Fed.R.Civ.P. 56. For the following reasons, the motion is granted.

### BACKGROUND

APM has brought this action for fraud arising out of APM's payment of $583,748.82 to Defendant Donald Bailey for the purchase of a non-existent mortgage loan with a represented principal balance of $827,517.37 (the "Loan"). The Loan was purportedly executed by Kristen Burwell and was payable to Keith and Julie Zastrow. Bailey represented that the Loan was secured by a first mortgage on property improved with a 44 unit apartment complex in Detroit, Michigan.

Bailey solicited from APM an offer to purchase the Loan, which Bailey represented to be owned and serviced by Powerhouse Mortgage and Funding Co. LLC ("Powerhouse"), a business owned and controlled by Bailey. Bailey also represented that Powerhouse had possession of the

Loan and collateral documents for the Loan and that the collateral documents securing the Loan constituted a first security lien.

In reliance on the fraudulent representations by Bailey, APM and Bailey entered into a Letter Agreement pursuant to which APM agreed to purchase the Loan from Bailey for a price equal to 71% of the aggregate unpaid principal balance of the Loan plus accrued interest. APM wired the sum of $583,748.82 to a bank account under Bailey's control. After the purchase of the Loan by APM, and in furtherance of his scheme to defraud APM, Bailey made three scheduled payments on the Loan.

APM then discovered, and the uncontroverted facts establish, that: the Loan had never closed; the Loan was not a valid obligation of the purported borrower; the Loan was not secured by a valid first lien on the property; the property was actually never owned by the purported borrower and mortgagor; and the prior payments were not made by the purported borrower.

When APM discovered the fraud, Bailey admitted that the Loan was never funded or owned by Powerhouse and returned $400,000.00 of the funds to APM. However, Bailey failed and refused to deliver the balance of the funds to APM, or to make APM whole for its losses. Therefore, APM filed this action against Bailey to recover a judgment for those losses.

APM has filed a motion for summary judgment on Count I of the Complaint. The Court set a briefing schedule requiring Bailey to file a response by May 26, 2006. When that date came and went without a response by Bailey, the Court sua sponte set another response date so as to give Bailey every opportunity to be heard. The Court later set yet another due date of February 28, 2007 for a response and, on the day Bailey's response was due, he sent in a brief one

paragraph letter generally denying the claims against him as his summary judgment response. Bailey's response is in violation of Local Rule 56.1(b)

## DISCUSSION

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating its entitlement to judgment against the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

Once the moving party has met its burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial. "Fed. R. Civ. P. 56(e). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *"Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

Count I of the Complaint alleges a cause of action for fraudulent misrepresentation. In order to succeed on a claim for fraudulent misrepresentation under Illinois law, a plaintiff must prove that:

(1) defendant made a false representation of material fact;

(2) defendant, when making the representation, knew the statement was false or made the statement in reckless disregard of the truth;

(3) defendant made the statement for the purpose of inducing the plaintiff to do an act;

3

(4) plaintiff acted in reasonable reliance on the statement; and

(5) plaintiff suffered injury as a result of his reliance on the statement.

*George William Hoffman & Co. v. Capital Services Co.*, 101 Ill.App.3d 487, 428 N.E.2d 600, 606 (Ill. App. 1 Dist. 1981). One acting on behalf of a corporation or business is personally liable for his own fraudulent acts and for those in which he participates. *Murphy v. Walters*, 87 Ill.App.3d 415, 410 N.E.2d 107, 110 (Ill. App. 2 Dist. 1980).

In this case, the undisputed evidence establishes that Bailey personally and knowingly made material misrepresentations of fact to APM upon which he intended APM to rely, and on which APM did in fact rely, resulting in damages to APM.

First, the undisputed evidence shows that Bailey made representations of material facts that he knew, or should have known, to be false. Bailey made the following false representations of material facts to APM: 1) that the Loan represented a valid and existing obligation of the maker (Kristen Burwell) payable to Keith and Julie Zastrow; 2) that Powerhouse was the owner and holder of the Loan; 3) that the collateral documents securing the Loan constituted a first security lien; 4) that four timely payments had been made on the Loan; and 5) that the Loan had closed and the proceeds of the Loan had been fully disbursed.

Each of the foregoing representations was false when made by Bailey and Bailey knew, or should have known, that they were false. In contrast to Bailey's representations, the undisputed evidence reveals that in actuality:

1. The Loan was not a valid and existing obligation of the maker. Rather, the promissory note had been executed by the maker as part of a "dry" closing conditioned upon the payees' ability to sell the note to a third party.

4

>           Although Bailey agreed with the Zastrows to purchase the Loan, he failed
>           to do so.
>
>     2.    Powerhouse was not the owner or holder of the Loan. Powerhouse agreed
>           to purchase the Loan, but failed to deliver funds to purchase the Loan.
>           Bailey did manage to convince the closing agent to deliver the original
>           promissory note to him. Bailey then used that original promissory note to
>           deceive APM into believing that it was valid and enforceable and failed to
>           disclose the circumstances under which he obtained possession of it or the
>           fact that it was signed as part of a conditional "dry" closing.
>
>     3.    Collateral documents, namely the mortgage, supposedly securing the Loan
>           did not constitute a first security lien because the transaction had never
>           closed, and preexisting liens were never paid.
>
>     4.    No payments had been made on the Loan.
>
>     5.    The Loan never closed, and Powerhouse never funded its purported
>           purchase of the Loan.

In light of the foregoing, the uncontroverted evidence is overwhelming that Bailey made numerous material misrepresentations of fact to APM concerning the Loan. The fact that he knew, or should have known, that these misrepresentations were false is obvious from the circumstances. Bailey never funded his purchase of the Loan from the Zastrows. He never paid any money to the Zastrows. Bailey knew, or should have known, that the representations he was making about his own businesses ownership of the Loan were false and, furthermore, he subsequently admitted their falsity to APM. For these reasons, we find that Bailey made false representations of material fact and that he either knew that the statements were false or made the statements in reckless disregard of the truth. Thus, the first and second elements of fraudulent misrepresentation are met.

Next, the undisputed evidence shows that Bailey made the false statements for the purpose of inducing APM to wire him money. Bailey approached APM under the pretext that he

5

already owned the Loan. He solicited a bid from APM to purchase the Loan, and he made the false representations to APM because they were necessary in order to induce APM to actually close the transaction. Bailey's intent is firmly established by the fact that he falsely represented that payments had been made on the Loan prior to APM's purchase, and the fact that he sent payments on the Loan for three months after APM's purchase. Therefore, the third element of fraudulent misrepresentation is met.

Fourth, the undisputed evidence reveals that APM acted in reasonable reliance on Bailey's representations. APM reasonably relied on Bailey's representations that the Loan was valid, that Powerhouse owned the Loan, that the Loan was secured by a first security lien, that payments had been made and that the Loan had been closed and the proceeds disbursed. In order to complete his unlawful scheme, Bailey obtained the original promissory note from the closing agent, and he obtained certified copies of the security instruments. APM funded its purchase of the Loan by wiring funds to Bailey after its escrow agent had received these documents. APM's reliance on Bailey's representations was reasonable and, thus, the fourth element of fraudulent misrepresentation is met.

Finally, APM suffered injury as a result of its reliance on Bailey's misrepresentations. APM suffered injury by wiring Bailey $583,748.82. Although Bailey returned $400,000 of the funds when his scheme was uncovered, he failed to return the remaining money to APM. In addition to this amount, APM lost the profit of $77,931.16 that it was to make on its subsequent sale of the Loan to a third party. Upon discovery of the fraud, APM was required to repurchase the Loan from that third-party. Therefore, the fifth and final element of fraudulent misrepresentation has been proven.

In sum, because the undisputed evidence establishes Bailey's culpability for the fraudulent misrepresentations made to APM, we hereby grant APM's motion summary judgment. Judgment is hereby entered in favor of APM and against Bailey on APM's claim for fraudulent misrepresentation.

Turning to the issue of damages, there also is no genuine issue of material fact with respect to the damages suffered by APM as a result of its reliance on Bailey's representations. The measure of damages in an action for fraudulent misrepresentation "is such an amount as will compensate the plaintiff for the loss occasioned by the fraud, or, as it has been expressed, the amount which plaintiff is actually out of pocket by reason of the transaction." *HGN Corp. v. Chamberlain, Hrdlicka. White, Johnson & Williams*, 642 F. Supp. 1443, 1451 (N.D. Ill. 1986).

Here, the undisputed evidence establishes APM's damages occasioned by the fraud of Bailey. APM wired $ 583,748.82 to a bank account under Bailey's name. When APM discovered the fraud and demanded that Bailey repurchase the Loan, APM and Bailey entered into an Agreement that Bailey would repurchase the Loan by paying AMP $ 400,000 immediately, with $186,337.78 to be paid pursuant to a promissory note payable within 90 days. Therefore, AMP incurred a loss of $186,337.78 on the Loan. In addition, the undisputed evidence shows that AMP lost the profit of $ 77,931.16 that it had made on the sale of the Loan to a third-party. Thus, summary judgment is entered in favor of APM and against Bailey in the amount of $264,268.94.

## CONCLUSION

For the foregoing reasons, we grant the motion of Plaintiff American Portfolio Mortgage Corp. for summary judgment (#9). Judgment is hereby entered in favor of Plaintiff American Portfolio Mortgage Corp. in the amount of $ 264,268.94 on Count I of the Complaint. Counts II and

III are hereby dismissed with prejudice. This case is hereby terminated. This is a final and appealable order.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: March 15, 2007